UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION


FILED
FEB 22 2013

*******************************************************************

| | | |
|---|---|---|
| ECONOMY PREMIER ASSURANCE COMPANY, | * * * | 1:11-CV-01008 |
| Plaintiff, | * * | |
| -vs- | * * * | ORDER AND OPINION |
| FRANK J. GOULD, SHARON C. GOULD, FRANK J. GOULD AND SHARON C. GOULD LIVING TRUST, and GOULD DEVELOPMENT, INC. [sic], | * * * * * | |
| Defendants, | * * | |
| -vs- | * * | |
| FIRST WESTERN INSURANCE and AMERICAN ECONOMY INSURANCE COMPANY, | * * * * | |
| Third Party Defendants. | * | |

*******************************************************************

Plaintiff seeks declaratory relief denying coverage for claims arising from a child who was injured riding as a passenger on an all-terrain vehicle owned by Gould Development L.L.C. (The various captions erroneously indicate a "regular" corporation). Defendants filed a third party complaint against American Economy Insurance Company ("American Economy") seeking the court's declaration that American Economy must provide coverage. Defendants filed a third party complaint in the alternative against their insurance broker, First Western Insurance ("Broker"), seeking damages, specifically reimbursement for legal costs associated with this proceeding and a declaration that Broker is liable for any damages that arise out of the accident because of Broker's alleged negligence in failing to secure the coverage sought by defendants prior to the accident. The parties seek this relief although no litigation has otherwise been filed with regard to the accident. The summary judgment motions filed by plaintiff and American Economy are ready for decision.

I. **BACKGROUND**

A. **Standard of Review**

Fed. R. Civ. P. 56 requires that this court grant a motion for summary judgment when the movant shows there is no genuine issue of material fact as to any essential element upon which a party will bear the burden of proof at trial. The movant must support its motion with evidence admissible at trial in order to meet its initial burden showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970), *superseded on other grounds by* Celotex Corp. v. Catrett, 477 U.S. 317 (1986). If the moving party meets its initial burden, the nonmoving party cannot rest upon allegations or denials in its pleadings to defeat the motion, Forrest v. Kraft Foods, Inc., 282 F.3d 688, 691 (8th Cir. 2002), but must "substantiate his allegations with enough probative evidence to support a finding in his favor" by citing to particular materials in the record which support the assertion that a fact is genuinely disputed, Roeben v. BG Excelsior Ltd. P'ship, 545 F.3d 639, 642 (8th Cir. 2008). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court must view the admissible evidence in a light favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The interpretation of insurance policies is pursuant to state law. Dupps v. Travelers Ins. Co., 80 F.3d 312, 313 (8th Cir. 1996); Dirks v. Sioux Valley Empire Elec. Ass'n, 484 NW2d 908, 912 (S.D. 1992). No party disputes that South Dakota law governs the substantive rights of the parties and so there is no need to apply conflict of law rules. Am. Serv. Mut. Ins. Co. v. Bottum, 371 F.2d 6, 11–12 (8th Cir. 1967).

B. **Factual Background**

On or about July 21, 2010, a minor child of Frank and Sharon Gould operated a 2009 Kawasaki Mule near the Goulds' lake property in Minnesota. The property is owned by the

2

Frank J. Gould and Sharon C. Gould Living Trust and is used for recreational purposes. Gould Development, L.L.C., ("Gould L.L.C.") was created primarily for the purpose of operating the Goulds' farm in South Dakota. Riding with the child were other minors. While driving the Mule between cabins, the vehicle tipped, causing injury to one of the passengers. Defendants asked that plaintiff and American Economy, who at the time insured the lake property and the Mule, respectively, be placed on notice of the accident. The accident occurred while the Mule was not on defendants' premises or "covered locations" as defined in the policies involved.

Defendants have property and business interests in South Dakota and Minnesota. Defendants purchased a substantial number of insurance policies to cover these interests. Defendants employed an individual whose task, amongst others, was to review, file, and track these insurance policies. Defendants also relied upon Frank Gould's brother, Mike Gould (also hereinafter named "Broker"), as their primary insurance agent for insuring their vehicles since 2000, whether in his capacity as an agent with First Western Insurance or in his earlier role as agent with M.L. Gould Insurance. When analyzing policies, defendants review the declarations page and schedules to make sure the proper real estate and vehicles are listed on the policies but do not otherwise analyze the policy documents. Plaintiff insured vehicles and property in the name of the Trust, which defendants' employee and Broker treated as a personal insurance policy. American Economy insured vehicles and property in the name of Gould L.L.C., which was treated by the broker as a commercial insurance policy.

Defendants owned Mules since at least 2001 and have maintained insurance covering them in some form up to the present. Prior to 2002, Gould L.L.C. insured the Mules through a farm liability insurance policy with Farmers Alliance. In October 2002, Farmers Alliance notified defendants and First Western that coverage for off farm use of the Mules was no longer provided. From 2002 to 2003, some or all of the Mules were covered under plaintiff's policy. Thereafter, Progressive Insurance provided liability coverage for the Mules. This policy continued until it was cancelled on or about March 26, 2009. The Mules were then transferred to a "commercial" Farmers Alliance policy, as indicated by letter from Farmers Alliance dated April 2, 2009. The term for this policy ended November 3, 2009. These transfers reflect Frank Gould's patronage of Broker's independent services—defendants sought and Broker obtained

competitive quotes from many different insurance companies. Broker also prepared an application for insurance on defendants' behalf to be sent for quotes from several companies.

Broker sent an application in September 2009 to American Economy to solicit a quote for insuring multiple vehicles, including the Mules, while identifying Gould L.L.C. as the proposed insured. Indiana Insurance ("Indiana"), a sister company of American Economy under Liberty Mutual Insurance, responded with a farm liability insurance quote that included off farm premises liability coverage for the three Mules defendants owned. An employee of Broker e-mailed Indiana notifying them of a lower price quoted from a competitor. In that same e-mail, Broker's employee asked Indiana if the company could "work with premium (sic)" and noted that the Mules were "farm ATVs used on premises only." Indiana responded to this request with a second e-mailed quote noting that it removed the off farm premises liability charges on the Mules which resulted in a decreased price. After a week of hashing out additional terms, the parties came to an agreement and Indiana issued a farm liability policy covering the Mules as "Scheduled Farm Personal Property" in the name of Gould L.L.C. on or about November 3, 2009, and effective through November 3, 2010. At no point did defendants express a preference for a particular insurance company to cover the Mule or any other vehicle, opting instead to agree to Broker's recommendation and negotiations.

Defendants' employee reviewed the policy information and confirmed the correct vehicles had been listed as insured. Broker's employee later noticed that Indiana failed to list Frank and Sharon Gould as additional insureds on the policy. As a result of repeated notices, Indiana issued an Additional Interest Endorsement ("Endorsement") naming the Goulds as additional insureds and charging them an additional premium for the provision. On or about April 8, 2010, defendants' employee informed Broker of the purchase of the 2009 Mule (later involved in the accident at issue). That same day, American Economy was notified by Broker to swap out a 2005 Mule for the 2009 Mule and it was added to the list of covered farm personal property under the policy. This Mule was insured, subject to limitations, under an American Economy farm liability insurance policy at the time of the accident. The Mule was licensed in South Dakota for road use.

## II. DECISION

Plaintiff supports its motion by arguing: (1) that not since 2002–2003 has one of its policies provided coverage for defendants' Mules; (2) that the Mule was being operated at the time of the accident off of covered farm premises within the policy, namely the Minnesota lake property; (3) that if the Mules are construed as falling under the "off road recreational vehicle" designation within the policy, using the Mule outside the covered farm premises invalidated any available secondary coverage; and (4) that if the Mules are construed as being a "vehicle . . . designed for use with any motor vehicle covered," they were available for the Goulds' "regular use" and thus outside such secondary coverage.

American Economy supports its motion by arguing: (1) defendants had the explicit opportunity to purchase off farm premises primary liability coverage for the Mules and chose not to do so; (2) the policy's definition of "insured" provides coverage only in a covered location and only when the liability arises from the conduct of farming operations; (3) the Mule used in the accident falls under the policy's definition of "motor vehicle," and bodily injuries resulting from the operation of these vehicles are excluded from secondary coverage unless the motor vehicle is used exclusively at the covered farm location.

Defendants respond to both motions by attempting to invoke the doctrine of "reasonable expectations." Defendants also allege that Broker acted as an agent of plaintiff and of American Economy, and that because Broker negligently failed to obtain appropriate coverage for defendants, plaintiff and American Economy are vicariously liable for said negligence which should in turn trigger relief to defendants. Defendants lastly argue that ambiguities in the American Economy farm liability policy and the farm umbrella policy with its sister company, Indiana Insurance (both are subsidiaries of Liberty Mutual Insurance), require coverage.

### A. Interpreting the American Economy Farm Policy and Indiana Insurance Umbrella Policy

Defendants ask the court to interpret both the American Economy farm liability policy and the Indiana Insurance umbrella policy to cause liability under the policies. American Economy argues that by virtue of defendants' failure to bring suit against Indiana Insurance, the

5

umbrella policy cannot be subject to court interpretation to determine liability, citing Fed. R. Civ. P. 3 and 4. Such issues do not impact the disposition of these motions and will not be addressed.

"Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted." Rogers v. Allied Mut. Ins. Co., 520 NW2d 614, 616 (S.D. 1994) (quoting Kremer v. Am. Family Mut. Ins. Co., 501 NW2d 765, 767–68 (S.D. 1993)). As an aside, I was the attorney for Allied Mutual in that case. However, liberal construction in favor of the insured "applies *only* where the language of the insurance contract is ambiguous and susceptible of more than one interpretation." Id. (emphasis in original) (quoting Klatt v. Cont'l Ins. Co., 409 NW2d 366, 369 (S.D. 1987)).

Such ambiguities may only be reasonably found. The court may not "seek out a strained or unusual meaning for the benefit of the insured." Id. (quoting City of Fort Pierre v. United Fire and Cas. Co., 463 NW2d 845, 848 (S.D. 1990)). The insurance contract is "to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." Prokop v. N. Star Mut. Ins. Co., 457 NW2d 862, 864 (S.D. 1990) (quoting Cheney v. Metro. Life Ins. Co., 370 NW2d 569, 573 (S.D. 1985)). "Moreover, insurance policies must be subject to a reasonable interpretation and not one that amounts to an absurdity." Id. (citation omitted). The fact that the parties may argue different interpretations of the policy does not alone create an ambiguity. Zochert v. Nat'l Farmers Union Prop. & Cas. Co., 576 NW2d 531, 532 (S.D. 1998) (citation omitted).

Defendants argue that there is a genuine issue of material fact as to three ambiguities in the policies which could be reasonably interpreted as providing coverage. First, defendants assert that there is sufficient ambiguity under both policies as to whether the Goulds and their minor child were proper insureds. Second, defendants contend that the Mule fell under the American Economy farm liability policy's definition of "utility vehicle" and not the excepted definition of "motor vehicle." Defendants also note in support of their ambiguity argument that American Economy has shifted its classification of the Mule under the policy and thus its justification for denying coverage to defendants multiple times since the company received notice of the accident. Third, defendants argue that the Indiana Insurance umbrella policy's exclusion of coverage for

bodily injury arising out of the operation "of any automobile, recreational vehicle, or watercraft" is ambiguous because the Mule may be classified as "mobile equipment" under the policy. Defendants concede, however, that the accident did not occur at a covered location under either policy.

### 1. *American Economy's Farm Liability Policy*

American Economy grants that while the child of the Goulds may otherwise fall under the definitions of insured—by function of the Goulds being listed as additional insureds on the policy—because coverage over insureds is limited by the policy to "matters related to the ownership or use" of covered locations, the policy unambiguously does not cover the accident. Similarly, American Economy claims that, in view of the location of the accident, it is immaterial that the Mule could be called a utility vehicle because the policy unambiguously does not cover the accident.

It is clear that Broker e-mailed American Economy to add Frank and Sharon Gould as "Additional Insured" on December 10, 2009, and that the Goulds were subsequently added as additional insureds under the Endorsement. Under the definition of additional insured in the policy, a person becomes "an **Insured** with respect to: 1. their interest in property covered under Section I; and 2. the ownership or use of the location(s) shown." (Emphasis in original). A plain reading of this provision provides that an additional insured only has the rights of an insured with regard to property covered under Section I of the policy and any other locations denoted as covered under the policy. Neither party has briefed the court on whether this limiting language has any impact on the case or whether this constitutes a limitation of additional insureds' coverage to farm use activities alone. It well may.

The Endorsement to Section II of the policy provides that the definition of insured, as applied to the Goulds as additional insureds, "only" applies to liability "arising out of . . . the ownership and maintenance of the insured farm premises . . . or . . . occupancy and use of the insured farm premises." The accident occurred away from insured farm premises and did not occur in the course of an activity involving ownership, maintenance, occupancy or use of the farm. Thus, American Economy's argument that no coverage exists solely because the Mule was not operated for a farm use at the time of the accident is supported by a plain interpretation of the

7

policy. As a result, the Goulds' minor child does not fall under the definition of insured under the policy.

Other terms also unambiguously support denial of coverage. American Economy argues that one particular exclusion in the policy—the motor vehicle exclusion for bodily injury and property damage coverage—applies to the accident. Defendants argue that "utility vehicle" is the most accurate definition of the Mule, thereby placing it outside any coverage exclusions in the policy. The policy's definition of utility vehicle, in relevant part, is "a motorized vehicle designed for hauling purposes which is principally used off public roads, not licensed for road use and guided by a steering wheel attached to a rack and pinion steering system." The problem with applying this definition to the Mule is that it was licensed for road use at the time of the accident. For this reason, the recreational motor vehicle exception does not apply because the definition explicitly requires that it not be licensed for road use.

Given the registration and the Mule's mechanical qualities, the only definition under the policy that can describe the Mule at the time of the accident without exception—a motorized land vehicle, required to be licensed for use on public roads, and not towed or carried on another motor vehicle—is that of "motor vehicle." South Dakota law requires that all-terrain vehicles such as Mules operating on public highways must be licensed and registered. *See* SDCL 32-5-1, 32-5-1.4, and 32-5-2. Defendants' argument that the Mule is designed principally for off road use, while likely true, is immaterial. The Mule is required to be licensed for use on public roads according to the law governing the contract and it was so licensed. Thus, a plain reading of the policy leaves the court with only one proper classification for the Mule—a motor vehicle.

Barring licensure, the Mule otherwise meets all of the criteria for a utility vehicle. By definition, a motor vehicle under the policy could not be a utility vehicle. Thus, had defendants not licensed the Mule, the definition of utility vehicle would have been the only viable definition. Defendants may very well be frustrated by the fact that their decision to license the Mule should change the classification of the vehicle under the policy. Registration, however, has definite implications for the risk profile of the vehicle. The ability to drive public roads increases the vehicle's exposure to traffic and attendant hazards. A utility vehicle, on the other hand, may only be used for off road hauling, a task in keeping with (1) the operation of a farm as envisioned

8

under such a farm policy and (2) an exposure to a more localized and narrow set of hazards. The additional risks that come with the ability to drive a vehicle on public roads warrant an additional premium. It is also clear that defendants were not using the Mule at the time of the accident in the manner of a utility vehicle and were using it off farm premises, an indication that defendants engaged in a use of the Mule that entailed this higher degree of risk.

The court is satisfied that the accident unambiguously falls under the motor vehicle coverage exclusion for bodily injury or property damage under the farm liability policy.

### 2. *Indiana Insurance's Farm Umbrella Policy*

From the facts provided by defendants and American Economy, it is difficult to determine whether the Endorsement adding the Goulds as individual insureds applies to the farm umbrella policy or not. However, the same result follows regardless whether the Endorsement applies to the umbrella policy. As noted above, the Endorsement limits liability protection to the Goulds as insureds, as further defined under the policy, to ownership, maintenance, occupancy or use of the farm premises. While relatives of the insured are defined as an insured under the umbrella policy's definition, the explicit restriction of coverage to ownership, maintenance, occupancy or use of the farm premises to the Goulds in the Endorsement places the operation of the Mule at the time of the accident outside of the umbrella policy's coverage. Defendants argue that the policy does not limit coverage to any particular covered location. They cite Section VII of the policy which provides that the "policy applies to occurrences during the policy period with no territorial limitations." However, this language cannot be read apart from the other provisions of the policy, including the Endorsement and other exclusions. *See* Am. Family Mut. Ins. Co. v. Elliot, 523 NW2d 100, 103 (S.D. 1994) (describing the process of finding ambiguity in a policy as requiring a court to ascertain "[t]he clear and plain meaning of the terms of the policy read as a whole").

If the Endorsement does not apply, then the Goulds are insured under the umbrella policy as members of Gould L.L.C.. In that case, Section II, subpart B, applies and defines insured as extending only to members and "only with respect to the conduct of your farming operation." Because the accident occurred off covered farm premises and did not involve the conduct of a

9

farming operation, defendants unambiguously fall outside the definition of insured with regard to the accident.

Additionally, American Economy argues that defendants are excluded from coverage under the umbrella policy because of the Mule's status as a recreational vehicle. American Economy makes this argument, instead of carrying over its "motor vehicle" argument from the farm liability policy, because the umbrella policy includes different definitions and defined terms. Under the policy's exclusions, bodily injury or property damage is excluded if they "aris[e] out of the ownership, maintenance, use or entrustment to others of any automobile, recreational vehicle, or watercraft." Defendants argue that the Mule falls into the category of "mobile equipment" and is thus covered under the policy. Mobile equipment is defined, in relevant part, as "farm machinery . . . and other vehicles designed for use principally off public roads" or "vehicles maintained for use on or next to premises an insured owns or rents." While the Mule is somewhat designed for use off public roads, it was not in use as farm machinery at the time of the accident, as described above. The only detail regarding the proximity of the accident to the Goulds' lake property was that it was "near" the property. Defendants admit that Broker knew that they took the Mules to non-farm property in Minnesota in the past, so such use was not unique. The umbrella policy's definition of recreational vehicle is the only definition that accurately reflects the Mule as it was used at the time of the accident. It is defined, in relevant part, as "a motorized all terrain vehicle." Nothing in this definition contradicts the mechanical nature or the use of the Mule at the time of the accident. It is clear, then, that the umbrella policy unambiguously excludes coverage of the accident at issue.

Because both policies clearly exclude the accident from coverage, there are no provisions that a reasonable factfinder may liberally and logically construe in favor of coverage. As a result, there is no genuine dispute of ambiguities in the policies' provisions and defendants' arguments on this issue are insufficient to support denial of American Economy's motion for summary judgment.

### B.    Reasonable Expectations

The South Dakota Supreme Court has "repeatedly declined to adopt" but has not yet rejected the doctrine of reasonable expectations. <u>Culhane v. W. Nat'l Mut. Ins. Co.</u>, 704 NW2d

10

287, 292 (S.D. 2005). The doctrine provides that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Dairyland Ins. Co. v. Wyant, 474 NW2d 514, 516 (S.D. 1991) (quoting Robert E. Keeton, *Insurance Law Rights At Variance With Policy Provisions*, 83 HARV. L. REV. 961, 967 (1970)). The Supreme Court has refrained from explicitly adopting the doctrine of reasonable expectations because the doctrine only applies in circumstances where material terms of the contract are ambiguous and no case invoking the doctrine before the Court has involved such ambiguity. *See, e.g.*, Culhane, 704 NW2d at 292; Dakota, Minn. & E. R.R. Corp. v. Heritage Mut. Ins. Co., 639 NW2d 513, 519 (S.D. 2002); Alverson v. Nw. Nat'l Cas. Co., 559 NW2d 234, 237 (S.D. 1997); Elliot, 423 NW2d at 103; Dairyland, 474 NW2d at 516.

> Whether an insured's expectations about his policy coverage are reasonable is a factual question which 'may arise in an action by the insured or his beneficiaries against the insurer for recovery under an insurance policy. The fact question may also arise in a declaratory judgment action to determine an insurer's liability under the policy.'

Trammell v. Prairie States Ins. Co., 473 NW2d 460, 465 (S.D. 1991) (quoting 20 Proof of Facts 2d 59 (1979)). Noting that this doctrine is similar to examining contracts of adhesion, defendants argue: (1) they lacked the expertise to parse out the fine details of the insurance contract; (2) they knew the lake property was insured by plaintiff and so they reasonably believed that coverage extended "near that location"; (3) plaintiff's policy included broad, generally worded pronouncements of worldwide coverage upon which defendants relied; (4) the American Economy policy listed the Mule in its primary coverage schedule; and (5) they paid nearly $25,000 in premiums to plaintiff and American Economy and should reasonably expect coverage for the accident because of these payments.

There is no need to address the factual question of defendants' reasonable expectations. Defendants fail to show that any ambiguity existed in plaintiff's policy. Defendants cannot rest on the bare assertion of reasonable expectations and must substantiate their claim with enough probative evidence to rebut plaintiff's arguments on issues of fact and law. *See* Roeben, 545 F.3d at 642. In resisting summary judgment, defendants must designate specific facts creating a

triable controversy. Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 714 (8th Cir. 2004). The court must deny defendants' reasonable expectations argument with respect to plaintiff's policy since the doctrine may only be employed when an insurance policy is ambiguous. *See, e.g.*, Culhane, 704 NW2d at 292. Defendants' arguments for applying the doctrine to American Economy's insurance policy must also be denied since, as outlined above, the terms of the policy are not ambiguous. Accordingly, the doctrine of reasonable expectations is unavailing to defendants.

There is also a common sense reason why the doctrine could not apply in this case. Remember that any expectations must be "reasonable." Remember also that defendants' Broker was advised to purchase coverage for off premises operations of the Mule. Broker, obviously based on cost considerations, rejected the very coverage that defendants now claim should exist. Any reasonable expectation would thus be that the defendants, acting through a relative and insurance broker, had no off premises coverage for the Mule. The court should not "force" coverage where none exists.

### C. Vicarious Liability

Defendants assert that vicarious liability imputes Broker's alleged negligence—failure to provide off premises liability coverage for the Mules—to both plaintiff and American Economy. The only reference to plaintiff's vicarious liability, however, is a passing assertion on page 13 of defendants' responsive brief. All legal analysis, affidavits, facts argued and statements of claimed material facts regarding vicarious liability otherwise reference only American Economy. Defendants cannot rest on the bare assertion of any theory in support of their claim and must substantiate their claim with enough specific facts to create a triable controversy. *See* Roeben, 545 F.3d at 642; Midwest Oilseeds, 387 F.3d at 714. Lacking any facts to support this claim, vicarious liability does not survive plaintiff's motion.

South Dakota defines the "agent of the insurer" as "any insurance producer who is compensated directly or indirectly by an insurer and sells, solicits, or negotiates any product of that insurer." SDCL 58-30-142(1). Conversely, the statute defines "agent of insured" as "any insurance producer or person who secures compensation from an insured or insurance customer only and receives no compensation directly or indirectly from an insurer for a transaction with

that insured or insurance customer." SDCL 58-30-142(2). The relationship between insurer and agent—or, as termed by statute, "appointed insurance producer"—is clear: the insurer is responsible for the acts of its representatives and insurance producers. SDCL 58-30-176.

By affidavit, Broker's Operations Manager testified that Broker: (1) was an "appointed insurance producer" for American Economy from 2009 through 2010; (2) was paid directly by American Economy, a "subsidiary" of Indiana Insurance, for any policy sold; and (3) had authority to bind coverage for American Economy.

If the statutory designation was the final authority on this matter, defendants' claim might survive summary judgment. However, the Supreme Court determined that "statutes regulating licensing and defining agents, brokers and solicitors, are not intended to change or to exclude the general laws of agency" and the relevant statutes restricted these definitions to an analysis outside of, and not superseding, an analysis under the general laws of agency. N. Star Mut. Ins. Co. v. Rasmussen, 734 NW2d 352, 361 (S.D. 2007) (quoting Boyter v. Blazer Constr. Co., 505 So. 2d 854, 860 (La. App. 1987)); see also Hass v. Wentzlaff, 816 NW2d 96, 109 (S.D. 2012) (reaffirming the principle "that the Legislature did not intend to impose strict liability upon insurance companies for any acts by an insurance agent").

All parties rely on the law of agency analysis in Rasmussen. In that case, the insured tasked his broker with obtaining both liability and umbrella coverage on a Crownline boat. The broker obtained underlying liability coverage for the boat but not umbrella coverage. At the time, the insured had existing umbrella coverage with North Star Mutual Insurance Company. Id. at 355. Over a year after obtaining the underlying liability coverage, the insured was involved in an accident with the boat. Only after the accident did North Star know that the insured owned the boat. Id. at 356. The insured sought coverage under his North Star umbrella policy and was denied. The insured claimed the broker was North Star's agent for purposes of imputing to North Star the broker's negligent failure to add the boat to the umbrella policy. Id. The question was whether the broker was acting as North Star's insurance agent at the time she failed to procure insurance. Id. at 361.

The insured argued that by issuing a personal liability umbrella policy to him in 1991, ten years before the accident, the broker became North Star's agent for any changes or actions made

13

with regard to that policy going forward ("servicing" the policy), including any additions of coverage (or failures to do so). Id. at 362. The Court rejected this argument. The Court cited its prior holding that "a new policy is formed with respect to added property when the insured first procures insurance on real property not covered under a previous policy between the insured and the insurance company" and presumably extended this theory to the personal property at issue in Rasmussen. Id. (quoting Rumpza v. Donalar Enters., Inc., 581 NW2d 517, 526 (S.D. 1998)). In other words, because the boat was not previously listed on the policy in question, a new policy is formed when it is added to an existing policy. In doing so, the court rejected the insured's theory as applied to the facts of the case but not the theory itself. The Court cited Lindsay v. Pettigrew, 59 NW 726 (S.D. 1894), for the proposition that where the broker is an "agent for numerous companies" and "no particular company was mentioned as the one in which appellant's property was to be insured, it is quite evident that no company is liable." Rasmussen, 734 NW2d at 362 (quoting Lindsay, 59 NW at 727).

In construing these two precedents, the Court noted:

The broker . . . may be the agent of the insurer for a certain purpose and of the insured for another purpose. For example, the broker acts for the insured for the purpose of making the application and procuring the policy, and for the insurer for the purpose of collecting and remitting the premiums and delivering the policy.

Id. at 363 (quoting Electro Battery Mfg. Co. v. Commercial Union Ins. Co., 762 F. Supp. 844, 848 (E.D. Mo. 1991)). This nuanced approach fits with the laws of agency which the Court distinguished from the categorical determinations provided in statute. See id. at 361.

Taking the facts in a light most favorable to defendants, the court assumes that defendants asked Broker to obtain off farm premises coverage for the 2009 Mule. Defendants argue that the act of replacing one Mule, a 2005 model, for a 2009 model on the same policy does not create a new policy as envisioned under Rasmussen, but rather constitutes "servicing" of an existing policy. Moreover, because the broker had the authority to bind American Economy in that transaction, the broker categorically assumed the role of American Economy's agent.

Defendants' arguments do not create a genuine issue of material fact. While the April 8, 2010, transaction may be classified as a replacement, the fact remains that at that time, the 2009 Mule was new property not covered under a previous policy. Under Rasmussen, the broker's

choice to place the 2009 Mule on the existing American Economy policy establishes a new policy for the 2009 Mule. While it is true that the broker's ability to bind American Economy is a factor that may otherwise establish the broker as the agent of American Economy, the correct inquiry according to Rasmussen is to look at the specific transaction at issue and determine whether the broker was acting in a manner akin to either "making the application and procuring the policy" or "collecting and remitting the premiums and delivering the policy." Id. at 363 (quoting Electro Battery Mfg., 762 F. Supp. at 848). While the premium did not change in swapping the 2005 Mule with the 2009 Mule, the broker clearly made an application to American Economy, albeit informally, and procured insurance for a vehicle that was not otherwise insured.

This case is distinguishable from other cases where the South Dakota Supreme Court did find a broker to be an agent of the insurer. For instance, in Ferguson v. N. Assurance Co. of London, 128 NW 125 (S.D. 1910), the Court found that a broker's failure to renew insurance at the express request of the insured made the broker an agent of the insurer. Id. at 126. While the issue is admittedly close, the broker in Ferguson had no authority to select any other company because the insured explicitly sought renewal of the existing policy, similar to a renewal of subscription. Id. Here, not only was the property insured by defendants for the first time, and was thus not a renewal, but there was no explicit request by defendants for coverage of the Mule under the American Economy policy, just that "coverage" should be added to the Mule. In questions of the law of agency, these seemingly minute matters of intentionality are dispositive. With the facts taken in a light most favorable to defendants, American Economy cannot be vicariously liable as a matter of law. Technical application of the law aside, it would be inequitable to impute liability to an insurer who explicitly offered a broker the particularized coverage perhaps sought by the insured and was told by the broker that the insured did not want it. The decision to not purchase certain coverage, especially in the face of recommendations from the insurer, is solely that of the insured. Broker could only have been acting as the agent for the defendants in rejecting the off premises coverage.

There are no genuine issues of material fact and the motions should be granted.
Therefore,

15

IT IS ORDERED:

1. Plaintiff's motion for summary judgment, Doc. # 42, is granted.

2. Third party defendant American Economy's motion for summary judgment, Doc. # 47, is granted.

3. No costs shall be taxed.

Dated this 19th day of February, 2013.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. Paepke
DEPUTY

(SEAL)

16